State, Bartlett, pros., v. Inhabitants of City of Trenton.

---

## THE STATE, EDMUND BARTLETT, PROSECUTOR, v. THE INHABITANTS OF THE CITY OF TRENTON.

1. Where a legislative act contains two sets of provisions, one giving specific and precise directions to do a particular thing, and the other in general terms, prohibiting certain acts, which would, in the general sense of the words used, include the particular act before author-ized, then the general clause does not control or affect the specific enactment.

2. The 83d section of the charter of the city of Trenton (*Laws*, 1874, *p.* 373,) applies to the collection of all assessments due and unpaid at the time of the passage of the act, notwithstanding the proviso in section 109.

On *certiorari*.

Argued at February Term, 1875, before Justices WOOD-HULL, VAN SYCKEL and SCUDDER.

For the plaintiff, *Kingman.*

For the defendant, *Alfred Reed.*

The opinion of the court was delivered by

VAN SYCKEL, J. The controversy in this case arises upon certain proceedings instituted to recover from the relator the assessments made against him for laying out and opening West Hanover street, in the city of Trenton. These assess-ments were affirmed by the Court of Errors and Appeals, at March Term, 1873, and by the city charter (*Laws*, 1866, *p.* 400, § 80,) were declared to be a lien upon the lands assessed, to be recovered by action of debt in any court of competent jurisdiction.

In 1874 a new charter was passed for the city (*Laws*, 1874, *p.* 373, § 83,) which provides two remedies for the collection of assessments of this character:

1. By suit for so much money laid out and expended by the city for the use of the person assessed; or,

2. By the summary mode of selling the property assessed at public sale for any term not exceeding fifty years, after advertising the same in two newspapers published in said city, for the space of two months, once, at least, in each week, giving notice of the time and place of sale, together with the description of the lot by the letter and number by which it is designated on the city atlas, and specifying the amount of money so laid out on the same; and it is thereby further enacted, that—

" The provisions of this section shall apply to the collection of all assessments remaining due and unpaid at the time of the passage of this act."

Section 109 provides, " that nothing in said act contained shall be construed so as to destroy, impair or take away any

right or remedy acquired or given by any act thereby repealed."

The principal reason relied upon by the prosecutor is, that under the charter of 1866, the only method of enforcing payment of the assessment, was by action of debt, in which he was entitled to a trial by jury, and that by the summary proceedings adopted under the charter of 1874, he is deprived of a jury trial, which he insists is such a right as cannot be taken from him without contravening section 109, above cited.

The authority of the legislature over municipal corporations, is supreme. The only limitation upon its power to alter, modify or repeal the charter is, that the repeal shall not operate to impair the obligation of existing contracts, or deprive creditors of a remedy for enforcing such contracts, which existed when they were made. *Rader* v. *Road District*, 7 *Vroom* 276.

The 83d section of the charter of 1874, neither impairs the obligation of any contract, nor deprives any party of a remedy for enforcing it, but gives an additional remedy for the collection of a debt which has been established as a lien on the lands of the prosecutor.

This it is competent for the law maker to do. *Sedgwick on Statutes, p.* 617, *notes.*

That the trial by jury, in a case of this nature, is not within the protection of that clause of our state constitution, which declares that the right of a trial by jury shall remain inviolate, is too well settled to be discussed. *Sedgwick on Statutes* 489, *notes.*

The legislature had power to substitute for the action of debt, another form of remedy, which did not admit of jury trials, and the only question, therefore, will be, what has the legislature done in this particular case?

The rule of statutory interpretation, applicable to this case is, that the act shall be so expounded, if practicable, as to give effect to every part of it, and it is the duty of courts, if they can, so to reconcile the different provisions, as to make the whole act consistent and harmonious.

In the construction of a statute, every part of it must be viewed in connection with the whole, so as to make all its parts harmonize, if practicable, and give a sensible and intelligent effect to each. It is not tô be presumed that the legislature intended any part of a statute to be without meaning. *Sedgwick on Stat.* 200 ; *Dwarris on Stat.* 144; *McCartee* v. *Orphan Asylum,* 9 *Cowen* 437.

There is no uncertainty as to the meaning of section 83 of the charter of 1874 ; it expressly declares, that its provisions shall apply to the collection of all assessments remaining due and unpaid at the time of the passage of the act.

This leaves no room for construction. The assessment against the relator was due and unpaid at that time, and' is, therefore, within the operation of the summary remedy, unless section 109 is so construed as to defeat the effect of section 83.

What existing rights or remedies were intended to be preserved by section 109 ?

This language must, if it can reasonably be done, be so construed as not to conflict with the previous provision.

Prior to the enactment of this charter of 1874, this court, in *Rader* v. *The Southeasterly Road District,* 7 *Vroom* 276, had adjudged that the charter of these public corporations could not be so altered as to impair the obligation of existing contracts, or to deprive a party of his remedy for enforcing them. It will be a reasonable construction of this section to hold that the legislature had in view this limitation upon their power, and that they intended only to protect existing contracts, and to preserve the remedies theretofore provided against the city, or its officers, for enforcing them.

This exposition of the statute will give effect to the clearly expressed intention of the legislature, that the class of assessments to which the one in question belongs shall be subject to the provisions of the 83d section.

In *De Winton* v. *The Mayor of Brecon,* 26 *Beav.* 533, the Master of the Rolls held, that where an act of parliament contains two sets of provisions, one giving specific and pre-

State, Bartlett, pros., v. Inhabitants of City of Trenton.

cise directions to do particular things, and the other, in general terms, prohibiting certain acts which would, in the general sense of the words used, include the particular acts before authorized, then the general clause does not control the specific enactments ; as if an act of parliament authorized a corporation to sell a particular piece of land, and by a subsequent general clause in the act it was declared, that nothing therein contained should authorize the company to sell any land, the general clause would not control the particular enactment, which would take effect, notwithstanding the prior exception was not clearly and distinctly expressed in the general clause.

That the general clause will not affect the previous particular enactment, is supported by *Smith* v. *Bell*, 10 *M. & W.* 378 ; *Pretty* v. *Solly*, 26 *Beav.* 611, and cases therein cited.

When the intention of the lawgiver, which is to be sought after in the interpretation of a statute, is specifically declared in a prior section as to a particular matter, it must prevail over a subsequent clause in general terms, which might, by construction, conflict with it. The legislature must be presumed to have intended what it expressly stated, rather than that which might be inferred from the use of general terms.

If, therefore, the proviso of the 109th section is so comprehensive as to embrace the right of trial by jury, it cannot defeat the prior expressed grant of authority to the city to elect between the specified remedies.

The second objection to the certified proceedings is, that the published notice states that the land will be sold for so much money laid out and expended thereon by the city.

The 83d section provides, that the assessment may be recovered as so much money laid out and expended on the lands assessed, and the only ground upon which an assessment can be supported is, that the city has benefited the lands to the extent of the assessment against them. In contemplation of law, therefore, if not strictly in fact, the city has laid out and expended the amount of the assessment for the appreciation in value of the prosecutor's lots.

The notice as published conforms in all respects to the requirements of the charter, and is fully authorized by the existing law.

The *certiorari* should be dismissed, with costs.